19-2132 United States v. Ybarra Cruz Council we're ready to hear when you're prepared to argue. May it please the court my name is Bernadette Cedillo and I represent Mr. Cruz in this matter. There are several issues before the court but I would like to concentrate on the denial of the motion to suppress and then the sufficiency of the evidence. First we would ask the court to review the motion as de novo. The government does not disagree that the district court applied the wrong standard at the motion to suppress hearing and analyzing the evidence in the light most favorable to the government and thus de novo review is correct. We disagree with the government's assertion that this would be merely academic and that the court should defer to the inferences made by the district court. The district court viewed the evidence in the light most favorable to the government and by doing so this skewed the interpretation of the evidence and improperly shifted the burden to the defense. But if you look at the facts neutrally there is insufficient evidence to prove that there was reasonable suspicion to stop Mr. Cruz on either of the theories asserted by the government. The first being based on the communication with the CI and the second being on the basis of a traffic violation or a mistake of law. So first if we look at the evidence with regards to the communication with the CI. First of all this CI had been just recent prior to having provided this information on the day in question had provided unreliable information on at least five instances where the CI had told the agent that drugs were coming to Las Cruces. They were expected to arrive and they never arrived. So the CI had provided unreliable information to the agent. Then on the day in question the CI calls up the agent, Agent tells him that the courier has just called him and the drugs are here in Las Cruces. That was the only information he had. There was no information regarding the description of the courier, the identity of the courier, the type of vehicle the courier would be driving, nothing of that nature. Only that he was in Las Cruces and that he was at a gas station off of exit 139. And he was traveling with his family, right? At that time he had not told him that he was traveling with his family. When the CI first called the agent the only information he had was that he was at this gas station and that he was here. So the agent goes over to try to cooperate, goes over to that gas station and sees several vehicles with Arizona plates. The agent had not been told that the courier might be driving a vehicle with Arizona plates, but he surmised because they believed that they were coming out of the Phoenix area that they would have Arizona plates. But there were multiple cars with Arizona plates there and none that stood out to him. So he was unable to cooperate the information that the CI had given him about the location. The CI then calls him back and the courier has contacted him and has moved locations and gives him the additional information that he is traveling with his family and that he is in a hurry because he has to get back to Phoenix very quickly. So the agent goes to the second location that the CA provided and again he's unable to cooperate the information from the CI because there is nobody that he as a courier. Then he moves about a block north. He goes north up the street. He's looking around and then he does see a gentleman in a white truck in an empty parking lot working on the front of his truck. And it takes a while, but he is then able to see that that truck has Arizona plates. And your honors, it is not unusual for people with Arizona plates to have Arizona. So he then continues to watch the vehicle. He sees a dark gray truck come up that contains a female and a young boy. And they don't get out of the vehicle, but they talk to the individual in the white truck, the one that working on the white truck. So just based on that, the officer calls or the agent calls an officer from New Mexico State Police and asks him to come out. He calls him at his house, asks him to come on duty for the purpose of stopping this individual that he's watching. He wants him, he directs him that he wants him to make a traffic stop on this individual. And how can you direct somebody to make a traffic stop on an individual when you don't know if that person is going to commit a traffic violation? But just based on what he had at that point, he asked him to come out and do that. Then he continues to watch the person he believes is a courier. The gray truck comes back. They both then move to the O'Reilly's parking lot. Agent Lozoya calls the CI and asks him to contact the courier and ask him where his location is. So the CI calls the courier and tells him that he's at the O'Reilly's parking lot. But the testimony was that Agent Lozoya had never lost sight of the person who was watching the suspected courier. And Agent Lozoya did not testify that he saw at that time, Mr. or the courier answer his phone or talk on the phone when the CI was supposed to be calling him to ask his location. There was no testimony of that. There was no testimony regarding how many vehicles were at the O'Reilly's parking lot or whether any other vehicles at the O'Reilly's parking lot had Arizona plates. And he had simply, Agent Lozoya simply had a hunch. That's all he had. The information that the courier had to leave quickly was also not corroborated because Agent Lozoya watched the courier at the O'Reilly's parking lot for about two hours. At that time, the CI got another phone call saying that the courier had to leave quickly because he had to go to Kansas to drop or to pick up. And so he, again, Agent Lozoya had told the CI to tell the courier that they could not do the transaction and they would have to wait till the next day. The courier offered to leave the drugs behind with a small down payment and then he would pick up the currency on the way back. Nothing of that information was ever, took place. Nothing was corroborated. After watching the courier for two hours at the O'Reilly's parking lot, two vehicles were hooked up together. Basically, the white truck hooked up the gray truck to the back of it and the white truck was towing the gray truck. They then moved to another part of town to a Walmart and were there at Walmart for an hour. They then moved back to O'Reilly's and then they moved back to Albertson's. So there was nothing that the agent observed that would indicate that there was, that this was a drug courier. Nothing that he could see. So then he asks, as soon as the CI doesn't get a phone call saying, hey, I'm just, I'm leaving. Forget it. The individual that the agent is watching just starts to leave town. So Agent Lozoya gives the information to Officer Palomares, who has by this time gotten dressed and ready and he's ready to make the traffic stop. And then he gets behind him and then he sees that white when he's passing the Doña Ana exit where the right lane has a dotted line where the, you can take the exit, that he crosses that about a quarter of the way of the vehicle for about four seconds and then continue straight. But the Officer Palomares does not stop him at that point. He continues to drive forward and follow Mr. Coos for at least a full minute. But it's undisputed, it's undisputed that he straddled the line. It is undisputed that he straddled the line. And then it's a question of whether or not that's a valid basis for a stop. That's correct, Your Honor. And if it's a valid basis for a stop, where are you? Your Honor, well, my position is that it was not a valid basis for the stop in these circumstances because first of all, the statute that he stopped him under allows for, basically it's for failure to maintain lane under New Mexico law. And that law says that you must maintain your lane as near as practical unless it is safe to cross over. And the testimony that was presented at the motion to suppress hearing was that there was no other traffic that was impeded at all. He was in the right hand lane. It was for four seconds and Officer Palmas did not stop him at that point. He only stopped him way down the road when he was already heading out of town and he had not seen any other violation. Right. I understand that. And it's well briefed by the parties. But what if, what if we were to say that that was a valid basis for the stop? Then where are you in your argument? Well, Your Honor, if that is a valid basis for the stop, then, I mean, he had, then my reasonable suspicion argument fails if that was a valid basis. But I believe that that it was not a valid basis because that, no, if it had not been for Officer Palmas directing, I'm sorry, Agent Lozoya directing Officer Palmas to make that stop, it would have been a valid basis. No other individual would have ever been stopped under those circumstances. And the case law basically says that you can take into account all of the circumstances. And if you look at the fact that Officer Palmas was directed to try to find some reason to stop Mr. That happens every day, though. It's just a wall stop where the police or the agents think that there's something wrong with that car and they say, follow it until you see a violation and pull them over. And I think the law is pretty clear that that's allowed. The Supreme Court has said that that's allowed, right? Well, yes, Your Honor. If you find that Officer or that Agent Lozoya had reasonable suspicion to direct Officer Palmas to make the stop. But otherwise, if it is based just on this fact of violation, I believe the facts are very, very close to the Gregory case, where in the Gregory case, it was a moving truck. In this case, Mr. Cruz was towing a truck behind his vehicle. In the Gregory case, the court side, it was on the right hand lane and there was no other traffic that could be impeded. Basically, the same circumstances for Mr. Cruz was in the right hand lane and there was no other traffic that was impeded. He did not quite cause any type of safety issue. And that was clear because the officer did not immediately stop him. And the officer only issued him a warning and the officer testified that he had no intention of ever citing him for that violation. He gave consent to search, didn't he? He did give consent to search, Your Honor. Your Honor, may we quickly move to the sufficiency of the evidence issue? Please. Yes, Your Honor. It is undisputed that Mr. Cruz was a documented informant. And the agents basically corroborate the testimony about what was told. The only difference is they say that they specifically told him that he was deactivated. And he says that they never used that word, but they do, the agents do corroborate that, yes, they told him if he takes care of the issue in Apache County, then they could possibly work together again. The agents also testify. It wasn't the evidence also that even when he was working as an agent, he wasn't just off on a lark and a frolic doing whatever deals he wanted to do. They were always controlled by's that the agents were aware of ahead of time and were intimately involved in. They were, Your Honor, but they did send him out of, I mean, on trips out of town where they were not supervising him at all. He would basically go and then come back and report. So it was not, I mean, they were, they would supervise him, but not to the extent that they watched him 100%. And he was allowed, there was testimony that on occasion he had bought back a package that was drugs and he was not supposed to have brought it back and they just told him to, and that the agents told him to, well, if we don't know about it, it didn't happen. And they just allowed the person that was supposed to come pick it up, come pick it up. And so there were, there was testimony that based on their prior encounters, there had been circumstances where he was able to act because he was acting in the drug trafficking world. And, and that's just a completely different. And there was also contrary testimony and the jury was free to believe what they want, which they wanted to believe. Right. I mean, that's not insufficient evidence. It's just conflicting evidence. Well, Your Honor, I don't, I don't believe that it's conflicting. I believe that it was clear that, um, I mean, the only thing that Mr. Cruz had to prove was that he had a reasonable belief that he was acting under public authority, not that he was actually acting under public authority. And I believe that everything that was presented regarding all of the forms that he was required to sign every time, every year, regarding the conditions of being an informant, was completely contradicted by the fact that he was never asked to sign anything at all, saying that he was deactivated or that he was no longer an informant, because it was very ambiguous conversation from the agents telling him that he was taking care of the problem in Apache County and they could work again. I see that my time is up, Your Honor. Thank you. Thank you very much. Ms. Jarosz, please proceed when you're ready. May it please the Court, Counsel. My name is Allison Jarosz, and I represent the United States in this matter. Counsel, let me do a couple of housekeeping things. I noticed that, uh, as Co-Counselor, or Opposing Counsel has indicated, that the District Court applied the wrong standard in regards to the motion to suppress. But has that been taken care of now in the District? Because this is about the third case that we've had where the wrong standard was applied. Can you inform us about that? And I think it's been brought to everybody's attention. Yes, Your Honor. I'm aware that this is an error that's popped up in a few cases out of the District of New Mexico. I'm not the Appellate Chief in our office, but I have heard and I do believe that this error was brought to the attention of the District Judges in the District. And my second question is, do you agree with Opposing Counsel as to what our standard of review is now in regards to this being de novo? Yes, Your Honor. Opposing Counsel requested a de novo review of the facts, and the government didn't oppose that, given that there was a clear error in the use of the standard that the District Court applied to reviewing the facts. We don't believe that that will change anything on appeal. Here, the disagreement between the parties isn't about the facts themselves. It's about the inferences and the legal conclusions that the District Court drew from the facts. And the government believes the District Court drew reasonable and correct inferences and legal conclusions. Thank you, Counsel, for your response. Returning to the actual substantive issues, beginning with the motion to suppress, it is well settled that reasonable suspicion may be based on the reports from a credible informant. The confidential informant in this case, who provided information leading to Mr. Cruz's apprehension, was a known and trusted informant who was actively working with HSI to infiltrate a drug trafficking organization. What about the argument that this CI had given incorrect information on at least five occasions that drugs were coming in? The first thing I'd like to correct is there isn't any testimony to the number of occasions. The at least five number, as far as I can tell, came from Defense Counsel's argument at the suppression hearing. The testimony of Agent Lozoya at the suppression hearing, which was undisputed, is that there was a handful of times where both Agent Lozoya and the informant believed that methamphetamine had been shipped from Arizona to New Mexico and they later found out that it had not been shipped and that the shipment had been delayed. Agent Lozoya clarified a little more at trial as he explained what had happened is that the drug trafficking organization was making these kind of empty assurances that it was going to get the methamphetamine shipped quickly. It was saying things like we've sent it, it's going to be on its way, it'll be there soon, you're going to get it, and then it wouldn't show up as quickly as they anticipated. Agent Lozoya clarified that there wasn't a specific date where they were sitting there waiting to get the methamphetamine and it didn't show up. It was more these promises as far as how soon they were going to ship it. The government doesn't believe that that delay is the kind of unreliability that would cause someone to question the drug courier when he actually called and said, I'm here in Las Cruces ready to deliver the drugs. To the extent that that does raise some question in the court's mind about the reliability of the information in this case, the government doesn't believe that would defeat reasonable suspicion. Reasonable suspicion doesn't require absolute certainty. This court has said on multiple occasions that reasonable suspicion can exist, even when it's more likely than not that the individual is engaged in innocent conduct. I think a case that's instructive in this regard is the case of Lejos Quijada. In that case, the court found that TIP was sufficiently reliable for a traffic stop where the informant who provided the TIP had given information leading to drug seizures approximately 50% of the time. The informant in this case was at least as reliable as the informant in Lejos Quijada. The informant in this case had a track record of providing information leading to methamphetamine seizures and arrests. At the time of the traffic stop, which was in March of 2018, he'd been working with HSI for well over a year. Agent Lejos' testimony is that he'd been working with this confidential informant since 2016. The information that the informant provided about the drug courier's travel plans, his traveling companions, and his real time location in Las Cruces was information that the informant got directly from talking to the drug courier. So that was information based on his personal knowledge. This information was sufficiently particularized that Agent Lejos was able to go out into Las Cruces, locate Mr. Cruz, and identify him as the potential suspect. Mr. Cruz matched the description of the drug courier in several objective and articulable regards. First, the drug courier was coming from Arizona to New Mexico with the drugs and Mr. Cruz was driving a truck with Arizona plates. Second, the drug courier reported that he was traveling with his family. Mr. Cruz was observed, as Defense Counsel noted, traveling with a woman and a young child. Third, the drug courier had told the informant that he was on his way to Kansas to pick up a truck. Agent Lejos was able to confirm that there was a connection between Mr. Cruz and Kansas because he was traveling with a second vehicle that had Kansas plates and he left town heading north on I-25. Finally, I think the most critical information here giving rise to reasonable suspicion was that Agent Lejos saw the drug courier in two separate locations in Las Cruces at the time the drug courier reported being there. The district court correctly determined that these facts gave rise to the minimal level of objective justification that is required for reasonable suspicion. If the court has any question about this determination, the court also has the option to uphold the stop based on Mr. Cruz's observed traffic violation, the lane deviation that was discussed. Ms. Cedillo stated the standard correctly. In New Mexico, drivers are required to maintain their lane as closely as feasible, taking into account the safety considerations of a particular situation. One thing I would like to note, Ms. Cedillo made a few arguments about impeding traffic. The government's position is that this law does not require a showing that traffic was impeded for there to be a violation. That's something that the court has considered before in United States v. Vance and how the New Mexico law certainly wasn't clear on that. There's no New Mexico court imposing that standard. That wasn't an argument that was raised below. And I don't know that Ms. Cedillo is asking that that be imposed as a requirement. I just want to make that clear. The requirement here is that the government showed that there was a lane deviation that the officer reasonably suspected was unjustified. Can I ask you there on the lane deviation, if we didn't have that, and you've made your argument why there was reasonable suspicion that he may be, the defendant may be carrying methamphetamine or drugs. Reasonable suspicion, two automobiles driving down the road, one being the law enforcement, I get reasonable suspicion when a car is pulled over and Information is provided that makes it suspicious that there may be something illegal going on. You can detain for a limited period, for instance, for a traffic dog, but pulling over, because I think that you might have drugs, you pull them over and then what? You go up to the car and you say, I'm not going to write you a citation. I'm not going to write you a warning citation. Even I'm going to not allowed to just ask you questions and shoot the breeze. What I don't follow necessarily where it goes at that point. If I understand the question, if the concern is about what would happen if the officer had pulled the car over only for suspicion of drug trafficking, what would be allowed at that point in time. Trying to picture of what happens next. I think the case law is clear that an officer may pull over a court or a car. And here I'm thinking of our visa and in many other cases. Lejos Quijada is one where you can make a traffic stop to based on reasonable suspicion that the car has contraband. The stop, of course, is limited duration to the purpose of the stop. So I think what the officer could do in that case is ask questions reasonably related to it. To try and either determine if this was, in fact, the drug career they're looking for, or if it wasn't. So they might ask questions about travel plans or about things of that nature, even if the car is carrying contraband and see what the person says and see if that develops into a probable cause for a detention or if they're able to dispel that reasonable suspicion and let the person go on their way. Or they could also ask permission to search, right? That's correct, Your Honor. They could do that as well. If that answers your question, I'll return to discussing the reasonable suspicion to stop the car based on lane deviation. In construing New Mexico statutes, or in statutes that are worded like the New Mexico statute, this court has repeatedly held that even a single deviation from a driver's lane of travel will give rise to reasonable suspicion for a traffic stop in the absence of adverse driving conditions that would otherwise interfere with the driver's ability to stay in their lane or somehow explain the deviation. The exit lane here that Ms. Cedillo has identified is the reason for the deviation is not an adverse driving condition. An exit lane is a normal and regular part of highway driving. The exit lane in this case was well marked with numerous signs and it was lit. In this regard, the traffic conditions that Mr. Cruz was facing were much more like the normal driving conditions in El Dorado and in Valenzuela. Those are cases where this court found that a single deviation did justify a traffic stop than the driving conditions are similar to cases like Gregory or Sequeros, where there was clear adverse either road, weather, or other traffic conditions that posed a safety reason causing the driver to leave their lane. This court should affirm the district court's conclusion that Officer Palomaris reasonably concluded that Mr. Cruz may have failed to maintain his lane. Mr. Cruz's second argument on appeal is that the evidence did not support was insufficient to support the jury's rejection of his public authority defense. In support of this argument, Mr. Cruz relies on his own testimony. It was more than reasonable for the jury to reject this testimony in favor of the agent's account. I believe Judge McHugh said it correctly, the issue here is insufficient evidence. It's simply conflicting evidence. Both of Mr. Cruz's former handlers, Agents Ariana and Agent Ochoa, who were Arizona HSI agents, testified at trial about the deactivation of Mr. Cruz as a confidential informant. They testified that they had met with Mr. Cruz on March 14 of 2018 prior to the commission of this offense. They claimed that they had told him that he was being terminated. And they claimed that they told him unequivocally that he was to stop working on any drug transactions. The jury was well within its authority to credit that evidence. Even if the court looks at both the agents and Mr. Cruz's testimony, there was still sufficient evidence for the jury to reject the public authority defense. Both the agents and Mr. Cruz agreed that Mr. Cruz as an informant operated under a written set of rules. Those rules included rules that prohibited Mr. Cruz from transporting drugs without the prior notice or approval of HSI. He wasn't permitted to simply go pick up 10 to 11 pounds of methamphetamine and drive cross state and deliver that methamphetamine into the community without letting HSI know so they could do something to protect individuals from the release of that methamphetamine. Mr. Cruz admitted on cross examination that he did not notify the agents of the trip to New Mexico, and he did not have their approval to transport this methamphetamine and I'm referring here to volume for the record on appeal page 736 Based on that evidence alone, the jury You know, had plenty of information on which to reject the public authority defense that was raised by Mr. Cruz. If there are no questions, that's all I have on the two arguments that have been the focus of oral argument on appeal today. I see I'm nearing the end of my time. I would simply ask that the court affirm the judgment of the district court below. Thank you. Thank you both for your arguments. The case is submitted and counsel are excused.